IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:21-CR-153 |
| | ) | |
| v. | ) | <u>INFORMATION</u> |
| | ) | |
| BRADY JOEL TOMLINSON, | ) | 21 U.S.C. § 331(a) |
| | ) | 21 U.S.C. § 353(b)(1) |
| Defendant. | ) | 21 U.S.C. § 333(a)(2) |
| | ) | |

**THE UNITED STATES ATTORNEY CHARGES:**

**<u>Regulation Under the Food, Drug, and Cosmetic Act</u>**

1. The United States Food and Drug Administration ("FDA") was the agency of the United States government responsible for protecting the health and safety of the American public by, among other things, enforcing the Federal Food, Drug, and Cosmetic Act ("FDCA"), found at Title 21, United States Code, Section 301, *et seq*. By enforcing the FDCA, the FDA ensured that drugs sold for human use were safe and effective for their intended uses, and that the labeling of such drugs contained true and accurate information.

2. The FDCA sought to accomplish this public health goal by, among other things, preventing the movement of misbranded and adulterated drugs in interstate commerce.

3. Under the FDCA, a "drug" included, among other things: (i) an article intended for use in the cure, mitigation, treatment or prevention of disease in man; (ii) an article (other than food) intended to affect the structure or function of the body of man; and (iii) an article intended for use as components of other drugs. 21 U.S.C. § 321(g)(1)(B) – (D).

4. A "prescription drug" under the FDCA was a drug that: (i) because of its toxicity and other potential for harmful effects, or the method of its use, or the collateral measures necessary to its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or (ii) was limited by an application approved by FDA, to use under the professional supervision of a practitioner licensed by law to administer the drugs. 21 U.S.C. § 353(b)(1).

5. A drug was misbranded if it was a "prescription drug" dispensed without the prescription of a practitioner licensed by law to administer "prescription drugs." 21 U.S.C. § 353(b)(1).

6. The FDCA prohibited the introduction or delivery for introduction into interstate commerce, or causing the introduction or delivery for introduction into interstate commerce, of any drug that was adulterated or misbranded. 21 U.S.C. § 331(a).

## **The Defendant**

7. BRADY JOEL TOMLINSON (hereinafter "TOMLINSON"), Defendant herein, at all times relevant, resided in the Southern District of Iowa and operated various websites through which TOMLINSON sold and distributed drugs intended to be injected into the human body and related devices to aid in such injection (e.g., syringes). These websites included vitasuppliers.com, labeled as an entity formerly known as "Medisupplement." TOMLINSON operated these websites and shipped such drugs and medical devices from locations in Polk and Warren County Iowa, all within the Southern District of Iowa.

## Introductory Allegations

8. Beginning in approximately the fall of 2014, TOMLINSON and an individual identified as S.T. agreed to go into business together. TOMLINSON and S.T. began to sell and distribute drugs intended to be injected into the human body, along with related devices, via www.medsupplystore.net and other internet websites. TOMLINSON and S.T. organized Medical Supply Store LLC, created the www.medsupplystore.net website, and opened accounts with credit card processing companies and banks in order to process the online sales and the financial transactions associated with their operations. The drugs and related devices were sold by TOMLINSON and S.T. to consumers without a prescription, with shipments to purchasers being made from the Southern District of Iowa.

9. In approximately May 2015, TOMLINSON and S.T. ended their joint operation and decided to operate separately. To further his own operation, TOMLINSON created and operated two new websites: www.vitasupplyshop.net and www.medisupplement.net. TOMLINSON continued to operate these websites through December 7, 2016.

10. On December 7, 2016, FDA agents visited TOMLINSON in-person at the Des Moines office space from which TOMLINSON operated his online sales business. FDA agents seized TOMLINSON's inventory of drugs intended to be injected into the human body and the related devices TOMLINSON stored at that location. The FDA agents advised TOMLINSON that the drugs he was selling were prescription drugs under the

FDCA, and therefore his distribution of these drugs and related devices without first receiving proof of a prescription from the customer was unlawful under federal law.

11. After the December 7, 2016 meeting with FDA agents, TOMLINSON, with the intent to defraud and mislead federal regulators, continued to sell and distribute the prescription drugs to customers without prescriptions, including via an entirely new website, www.vitasupplier-com.3dcartstores.com, which was labeled "MEDISUPPLEMENT formerly Vitasuppliers". The purpose of TOMLINSON's creation of this new website was to defraud and mislead the FDA by giving the impression that TOMLINSON had shut down his illegal operation, when in reality TOMLINSON continued his unlawful conduct using a different website in an attempt to avoid FDA detection.

12. On December 12, 2016, a customer sent an email to vitasupplyshop16@gmail.com asking why the customer could no longer find the Medisupplement website on the internet. TOMLINSON falsely responded to the customer via email that the company temporarily shut down its website due to a large credit card breach but was still doing business via email and that its product was still being shipped.

13. On January 9, 2017, a customer sent an email to vitasupplyshop16@gmail.com asking why she could not access the website. TOMLINSON falsely responded to the customer via email that due to an industry-wide shortage of vitamin B12 that limited his business's ability to serve new customers, the business had shut down its website and was operating via email to prioritize its current customers.

14. On November 1, 2018, an undercover FDA agent attempted to order one vial of 30ml Super MIC B Complex (Methyl B12) W/L-Carnitine, an injectable prescription drug, from TOMLINSON's www.vitasupplier-com.3dcartstores.com website for $139. The website would not accept the agent's credit card payment for the purchase. On the "One Page Checkout" screen, the website stated the following: "THE PAYMENT OPTION ON OUR WEBSITE IS CURRENTLY DISABLED. TO PLACE AN ORDER, EMAIL US AT vitasupplyshop16@gmail.com AND LET US KNOW WHAT YOU WOULD LIKE TO ORDER AND A CURRENT SHIPPING ADDRESS AND WE WILL EMAIL YOU AN INVOICE THROUGH OUR CREDIT CARD MERCHANT FOR PAYMENT."

15. Using an undercover email account, the FDA agent sent an email to vitasupplyshop16@gmail.com with the requested information to place the same order that was attempted via the website.

16. Shortly thereafter, the agent received a response to the aforementioned email from "Medisupplement vitasupplyshop16@gmail.com". The email stated: "We just emailed you an invoice through our credit card merchant for payment for the 30ml Super MIC vial with sale pricing. Once the invoice is paid, we will get your order shipped out 1-2 business days. Thanks, The Medisupplement Team."

17. The agent received a Medisupplement invoice in the amount of $139.00 for the purchase. The bottom of the invoice stated, "For assistance, please contact Brady Tomlinson at 813-618-3753 or vitasupplyshop16@gmail.com."

18. The agent responded to email account vitasupplyshop16@gmail.com and paid for the invoice using an undercover credit card. In that email, the agent also submitted a question to vitasupplyshop16@gmail.com regarding the intended use of the product.

19. The FDA agent received a response from TOMLINSON, which demonstrated that the product was intended to be used to treat and prevent obesity, and to affect the structure and function of the human body, by stating: "The compounder suggests on the label 1-3 times per week as needed. A lot of our customers use the vitamins 1-2 times per week (depending on if your [sic] using it for weight loss or just to maintain your weight. Thanks, The Medisupplement Team."

20. On or about November 8, 2018 the FDA agent received one vial labeled "30ml Super B Complex with MIC and L-Carnitine" via mail at 9212 Fry Road, Suite 105, #177, Cyprus, Texas, 77433. The return address on the shipment containing the vial was 4225 Fleur Drive, Des Moines, IA 50321 and the invoice in the shipment listed the enclosed item as "30ML SUPER MIC B COMPLEX (METHYL B12) W/L-CARNITINE VIAL". "The Medisupplement Team" never requested a prescription, nor did the undercover FDA agent ever provide one prior to the dispensing of the product.

21. The 30ml Super B Complex with MIC and L-Carnitine sold, dispensed, and distributed by Defendant TOMLINSON was a prescription drug because its method of use (*i.e.,* administration via injection) and the collateral measures necessary for its safe, effective, and appropriate use (such as medical expertise needed to diagnose the conditions indicated for treatment and clinical evaluations needed to determine the

appropriate amount and duration of treatment) were not safe for use except under the supervision of a medical practitioner licensed by law to administer it.

22. TOMLINSON was not a licensed medical practitioner or licensed in any way to dispense prescription drugs.

23. Under the FDCA, a prescription drug is deemed to be misbranded if it is dispensed without a prescription of a practitioner licensed by law to administer such drug. 21 U.S.C. § 353(b).

24. Under the FDCA, it is unlawful to introduce or deliver for introduction into interstate commerce, or cause such introduction or delivery, a drug that is misbranded. 21 U.S.C. § 331(a).

### Count 1
**(Introduction of Misbranded Drugs to Interstate Commerce, in Violation of 21 U.S.C. §§ 331(a), 353(b)(1), and 333(a)(2))**

25. Paragraphs 1 through 24 are incorporated by reference as though realleged in their entirety herein.

26. On or about Nov. 1, 2018, in the Southern District of Iowa, the Defendant, BRADY JOEL TOMLINSON, with the intent to defraud or mislead, introduced, delivered for introduction, and caused the introduction and delivery for introduction into interstate commerce, a drug, which was misbranded within the meaning of 21 U.S.C. § 353(b)(1), in that it was a prescription drug that was not dispensed upon a written prescription of a practitioner licensed by law to administer such drug, was not dispensed upon an oral prescription of such practitioner which was reduced promptly to writing

and filed by the pharmacist, and was not dispensed by refilling any such written or oral prescription.

This is a violation of Title 21, United State Code, Sections 331(a), 353(b)(1), and 333(a)(2).

|  |  |
|---|---|
| RICHARD D. WESTPHAL<br>United States Attorney | GUSTAV W. EYLER<br>Director<br>Consumer Protection Branch |
| By: *(signature)*<br>Adam J. Kerndt<br>Assistant United States Attorney | By: *(signature)*<br>Ross Goldstein<br>Marcus P. Smith<br>Trial Attorneys<br>Consumer Protection Branch<br>Civil Division<br>U.S. Department of Justice |