UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 4:21-CR-153 |
| v. ) | |
| ) | PLEA AGREEMENT |
| BRADY JOEL TOMLINSON, ) | |
| ) | |
| Defendant. ) | |

The United States of America (also referred to as "the Government") and the Defendant, BRADY JOEL TOMLINSON, and Defendant's attorney, enter into this Plea Agreement.

**A.   CHARGES**

1.   <u>Subject Offenses</u>.   Defendant will waive Indictment (by executing a separate waiver of Indictment form) and plead guilty to Count 1 of a United States Attorney's Information, that is Introduction of Misbranded Drugs to Interstate Commerce, in violation of Title 21, United State Code, Sections 331(a), 353(b)(1), and 333(a)(2).

2.   <u>Charges Being Dismissed</u>.   There are no charges to be dismissed at the time of sentencing.

**B.   MAXIMUM PENALTIES**

3.   <u>Maximum Punishment</u>.   Defendant understands that the crime to which Defendant is pleading guilty carries a maximum sentence of 3 years in prison; a maximum fine of $250,000; and a term of supervised release of not more

than 1 year. A mandatory special assessment of $100 per count must also be imposed by the Court.

    4.    <u>Supervised Release--Explained</u>. Defendant understands that, during any period of supervised release or probation, Defendant will be under supervision and will be required to comply with certain conditions. If Defendant were to violate a condition of supervised release, Defendant could be sentenced up to one (1) year in prison, without any credit for time previously served.

    5.    <u>Detention</u>. Provided that Defendant does not violate any conditions of Defendant's pretrial release, and does not appear to be mentally at risk to harm himself or any other person, the Government agrees to recommend that Defendant may remain on pretrial release pending imposition of sentence.

**C.**    **NATURE OF THE OFFENSE -- FACTUAL BASIS**

    6.    <u>Elements Understood</u>. Defendant understands that to prove the offense alleged under **Count 1 (Introduction of Misbranded Drugs to Interstate Commerce)**, the Government would be required to prove beyond a reasonable doubt the following elements:

        a.    The article at issue in this case was a drug;

        b.    The article was a prescription drug;

        c.    Defendant introduced, delivered for introduction, or caused the introduction or delivery for introduction into interstate commerce, a prescription drug that was misbranded in that it was dispensed without a valid prescription; and

        d.    Defendant acted with the intent to defraud or mislead.

      7.    <u>Factual Basis</u>.  As a factual basis for his plea of guilty, Defendant admits the following:

      a.    Beginning in the summer of 2014, Brady Joel Tomlinson ("Tomlinson" or "Defendant") was approached by a long-time acquaintance, S.T., about going into business with S.T. to distribute injectable solutions of Vitamin B12, syringes, and needles via the internet.  Both Defendant and S.T. resided in the Southern District of Iowa.

      b.    By October 2014, Defendant and S.T. agreed to go into business together and began selling injectable Vitamin B12, syringes, and needles via www.medsupplystore.net and other internet websites. Together they organized Medical Supply Store LLC, set up the aforementioned website, and opened accounts with credit card processing companies and banks in order to process the online sales and financial transactions associated with their operation.

      c.    By October 2014 through approximately May 2015, Defendant and S.T. together continued their business of selling injectable Vitamin B12, syringes, and needles via the internet.  The injectable Vitamin B12 was sold to customers without a prescription with shipments to customers being made from the Southern District of Iowa.  The various assortments of injectable Vitamin B12 solutions were prescription drugs under federal law.

      d.    In approximately May 2015, Defendant and S.T. dissolved their agreement and decided to operate independently.  S.T. maintained the www.medsupplystore.net website and continued to operate it.  To further his independent operation, Defendant, in approximately May 2015, created and operated two new websites, www.vitasupplyshop.net and www.medisupplement.net whereby Defendant, without requiring a valid prescription, distributed various injectable solutions of Vitamin B12, syringes, and needles to customers from approximately May 2015 until December 7, 2016.

      e.    On December 7, 2016, the United States Food and Drug Administration ("FDA") visited Defendant in-person at the Des

    Moines location from which Defendant was operating his online sales business. At that location, the FDA agents seized Defendant's inventory of Vitamin B12 solutions intended to be injected into the human body and related devices. The FDA agents advised Defendant personally on December 7, 2016 that the solutions he was selling were prescription drugs under the Federal Food, Drug, and Cosmetic Act ("FDCA") and therefore his distribution of these solutions and related devices without first receiving proof of a prescription from the customer was a violation of federal law.

f. From about December 12, 2016, to on or about April 11, 2019, with the intent to defraud and mislead federal regulators, Defendant continued selling prescription drugs without prescriptions to end users via a new website Defendant created, www.vitasupplier-com.3dcartstores.com. The prescription drugs included various assortments of injectable Vitamin B12 solutions and were "prescription drugs" within the meaning of the FDCA because of their method of use (administration via injection) and the collateral measures necessary for their safe, effective, and appropriate use (such as medical expertise needed to diagnose the conditions indicated for treatment and clinical evaluations needed to determine the appropriate amount and duration of treatment).

g. The purpose of Defendant creating this new website was to defraud and mislead the FDA by giving the impression that Defendant had shut down his illegal operation, when in reality Defendant continued his unlawful conduct, using a different website in an attempt to avoid FDA detection.

h. Defendant dispensed the prescription drugs, without any valid prescriptions, to end users within and outside of the Iowa. Defendant processed and packaged orders of prescription drugs and sent them to end user customers throughout the United States. He processed and packaged these orders in the Southern District of Iowa, including his residence in Norwalk, Iowa. Defendant sent the prescriptions drugs to these end users via the United States Postal Service or other commercial interstate carriers.

  i. On or about November 1, 2018, Defendant, with the intent to defraud or mislead, introduced and delivered for introduction into interstate commerce a drug which was misbranded within the meaning of 21 U.S.C. § 353(b)(1), in that it was a prescription drug that was not dispensed upon a valid prescription. Specifically:

    (i) On November 1, 2018, an undercover FDA agent attempted to order one vial of 30ml Super MIC B Complex (Methyl B12) W/L-Carnitine, an injectable prescription drug, from TOMLINSON's www.vitasupplier-com.3dcartstores.com website for $139. The website would not accept the agent's credit card payment for the purchase. On the "One Page Checkout" screen, the website stated the following: "THE PAYMENT OPTION ON OUR WEBSITE IS CURRENTLY DISABLED. TO PLACE AN ORDER, EMAIL US AT vitasupplyshop16@gmail.com AND LET US KNOW WHAT YOU WOULD LIKE TO ORDER AND A CURRENT SHIPPING ADDRESS AND WE WILL EMAIL YOU AN INVOICE THROUGH OUR CREDIT CARD MERCHANT FOR PAYMENT."

    (ii) Using an undercover email account, the FDA agent sent an email to vitasupplyshop16@gmail.com with the requested information to place the same order that was attempted via the website. Shortly thereafter, the agent received a response to the aforementioned email from "Medisupplement vitasupplyshop16@gmail.com". Defendant sent the emails from this email account. The email stated: "We just emailed you an invoice through our credit card merchant for payment for the 30ml Super MIC vial with sale pricing. Once the invoice is paid, we will get your order shipped out 1-2 business days. Thanks, The Medisupplement Team." The agent received a Medisupplement invoice in the amount of $139.00 for the purchase. The bottom of the invoice stated, "For assistance, please contact Brady Tomlinson at 813-618-3753 or vitasupplyshop16@gmail.com." The agent responded to email account vitasupplyshop16@gmail.com and paid for the invoice using an undercover credit card. In that email, the agent also submitted a question to vitasupplyshop16@gmail.com regarding the intended use

    of the product.  The FDA agent received a response from Defendant, which demonstrated that the product was intended to be used to treat and prevent obesity, and to affect the structure and function of the human body by stating: "The compounder suggests on the label 1-3 times per week as needed.  A lot of our customers use the vitamins 1-2 times per week (depending on if your [sic] using it for weight loss or just to maintain your weight.  Thanks, The Medisupplement Team."

    (iii) On or about November 8, 2018 the FDA agent received one vial labeled "30ml Super B Complex with MIC and L-Carnitine" via mail at 9212 Fry Road, Suite 105, #177, Cyprus, Texas, 77433.  The return address on the shipment containing the vial was 4225 Fleur Drive, Des Moines, IA 50321 and the invoice in the shipment listed the enclosed item as "30ML SUPER MIC B COMPLEX (METHYL B12) W/L-CARNITINE VIAL".  "The Medisupplement Team".  The Defendant never requested a prescription, nor did the undercover FDA agent ever provide one prior to the dispensing of the product.  Defendant sold and dispensed this vial.

    (iv) The 30ml Super B Complex with MIC and L-Carnitine sold, dispensed, and distributed by Defendant was a prescription drug because its method of use (*i.e.,* administration via injection) and the collateral measures necessary for its safe, effective, and appropriate use (such as medical expertise needed to diagnose the conditions indicated for treatment and clinical evaluations needed to determine the appropriate amount and duration of treatment) were not safe for use except under the supervision of a medical practitioner licensed by law to administer it.

j.  At no time has Defendant been a licensed medical practitioner or licensed in any way to dispense prescription drugs.  Under the FDCA, a prescription drug is deemed to be misbranded if it is dispensed without a prescription of a practitioner licensed by law to administer such drug. 21 U.S.C. § 353(b). Under the FDCA, it is unlawful to introduce or deliver for introduction into interstate

    commerce, or cause such introduction or delivery, a drug that is misbranded. 21 U.S.C. § 331(a).

 k. From December 12, 2016 and continuing until April 11, 2019, Defendant stored various injectable solutions of Vitamin B12, syringes, and needles in Defendant's residence in the 7500 block of SW 13th Street in Des Moines, Iowa, packaged orders of these items at that residence for shipment to end users, and then delivered packaged orders to Des Moines area United States Postal Service facilities for final delivery to end users. Defendant sold various injectable solutions of Vitamin B12—each a prescription drug—to end users without a prescription throughout this period.

 l. On April 11, 2019, law enforcement conducted a search warrant at Defendant's residence in the 7500 block of SW 13th Street in Des Moines. Various injectable solutions of Vitamin B12—each a prescription drug—were located at the residence as well as items, equipment, and records related to Defendant's distribution operation.

8. <u>Truthfulness of Factual Basis</u>. Defendant acknowledges that the above statements are true. Defendant understands that, during the change of plea hearing, the judge and the prosecutor may ask Defendant questions under oath about the offense to which Defendant is pleading guilty, in the presence of Defendant's attorney. Defendant understands that Defendant must answer these questions truthfully, and that Defendant can be prosecuted for perjury if Defendant gives any false answers.

9. <u>Waiver of Rule 410 Rights</u>. Defendant expressly waives Defendant's rights under Rule 410 of the Federal Rules of Evidence and agrees that all factual statements made in this plea agreement, including under the Factual Basis or Attachment A, are admissible against Defendant. Should Defendant fail to plead

guilty pursuant to this plea agreement or move to withdraw his plea or to set aside Defendant's conviction, then these admissions may be used against Defendant in the Government's case-in-chief and otherwise, including during the continuing prosecution of this case.

10. <u>Venue</u>.  Defendant agrees that venue for this case is proper for the United States District Court for the Southern District of Iowa.

**D.     SENTENCING**

11. <u>Sentencing Guidelines</u>.  Defendant understands that Defendant's sentence will be determined by the Court after considering the advisory United States Sentencing Guidelines, together with other factors set forth by law.  The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case, which include, but are not limited to the following:

    (a)     The nature of the offenses to which Defendant is pleading guilty;

    (b)     The amount of loss, under USSG §2B1.1(b)(1);

    (c)     Defendant's role in the offense;

    (d)     Whether Defendant attempted to obstruct justice in the investigation or prosecution of the offense;

    (e)     The nature and extent of Defendant's criminal history (prior convictions); and

    (f)     Acceptance or lack of acceptance of responsibility.

Defendant understands that, under some circumstances, the Court may "depart" or "vary" from the Sentencing Guidelines and impose a sentence more severe or less

severe than provided by the guidelines, up to the maximum in the statute of conviction. Defendant has discussed the Sentencing Guidelines with Defendant's attorney.

12. <u>Acceptance of Responsibility</u>. The Government agrees to recommend that Defendant receive credit for acceptance of responsibility under USSG §3E1.1. The Government reserves the right to oppose a reduction under §3E1.1 if after the plea proceeding Defendant obstructs justice, fails to cooperate fully and truthfully with the United States Probation Office, attempts to withdraw Defendant's plea, or otherwise engages in conduct not consistent with acceptance of responsibility. If the base offense level is 16 or above, as determined by the Court, the Government agrees that Defendant should receive a 3-level reduction, based on timely notification to the Government of Defendant's intent to plead guilty.

13. <u>Presentence Report</u>. Defendant understands that the Court may defer a decision as to whether to accept this Plea Agreement until after a Presentence Report has been prepared by the United States Probation Office, and after Defendant's attorney and the Government have had an opportunity to review and challenge the Presentence Report. The parties are free to provide all relevant information to the Probation Office for use in preparing a Presentence Report.

14. <u>Disclosure of Presentence Investigation Reports</u>. The United States District Court for the Southern District of Iowa has issued the following Administrative Order:

>The presentence investigation report is a sealed and confidential document. Unless specifically authorized by the district court, a defendant may not disseminate, disclose, or distribute a presentence investigation report, or any part or page of a presentence investigation report, in either draft or final form. A defendant who violates this order, may be subject to prosecution for contempt of court under 18 U.S.C. § 401(3). This order does not apply to a defendant's review of a presentence investigation report with the defendant's own attorney.

Defendant acknowledges and understands this order.

15.     <u>Evidence at Sentencing</u>.   The parties may make whatever comment and evidentiary offer they deem appropriate at the time of sentencing and entry of plea, provided that such offer or comment does not violate any other provision of this Plea Agreement.   Nothing in this Plea Agreement restricts the right of Defendant or any victim to make an allocution statement, to the extent permitted under the Federal Rules of Criminal Procedure, nor does this Plea Agreement convey any rights to appear at proceedings or make statements that do not otherwise exist.

16.     <u>Sentence to be Decided by Judge -- No Promises</u>.   This Plea Agreement is entered pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.   Defendant understands that the final sentence, including the application of the Sentencing Guidelines and any upward or downward departures, is within the sole discretion of the sentencing judge, and that the sentencing judge is not required to accept any factual or legal stipulations agreed to by the parties. Any estimate of the possible sentence to be imposed, by a defense attorney or the Government, is only a prediction, and not a promise, and is not binding.   Therefore,

it is uncertain at this time what Defendant's actual sentence will be.

17. <u>No Right to Withdraw Plea</u>. Defendant understands that Defendant will have no right to withdraw Defendant's plea if the sentence imposed, or the application of the Sentencing Guidelines, is other than what Defendant anticipated, or if the sentencing judge declines to follow the parties' recommendations.

**E.     FINES AND COSTS**

18. <u>Fines and Costs</u>. Issues relating to fines and/or costs of incarceration are not dealt with in this agreement, and the parties are free to espouse their respective positions at sentencing.

19. <u>Special Assessment</u>. Defendant agrees to pay the mandatory special assessment of $100 ($100 per count) at or before the time of sentencing, as required by 18 U.S.C. § 3013.

**F.     LIMITED SCOPE OF AGREEMENT**

20. <u>Limited Scope of Agreement</u>. This Plea Agreement does not limit, in any way, the right or ability of the Government to investigate or prosecute Defendant for crimes occurring outside the scope of this Plea Agreement. Additionally, this Plea Agreement does not preclude the Government from pursuing any civil or administrative matters against Defendant, including, but not limited to, civil tax matters and civil forfeiture which arise from, or are related to, the facts upon which this investigation is based.

21. <u>Agreement Limited to Southern District of Iowa</u>. This Plea

Agreement is limited to the United States Attorney's Office for the Southern District of Iowa, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

### G.   WAIVER OF TRIAL, APPEAL AND POST-CONVICTION RIGHTS

22.   <u>Trial Rights Explained</u>.   Defendant understands that this guilty plea waives the right to:

    (a)   Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

    (b)   A speedy and public trial by jury, which must unanimously find Defendant guilty before there can be a conviction;

    (c)   The assistance of an attorney at all stages of trial and related proceedings, to be paid at Government expense if Defendant cannot afford to hire an attorney;

    (d)   Confront and cross-examine adverse witnesses;

    (e)   Present evidence and to have witnesses testify on behalf of Defendant, including having the court issue subpoenas to compel witnesses to testify on Defendant's behalf;

    (f)   Not testify or have any adverse inferences drawn from the failure to testify (although Defendant also has the right to testify, if Defendant so chooses); and

    (g)   If Defendant is convicted, the right to appeal, with the assistance of an attorney, to be paid at Government expense if Defendant cannot afford to hire an attorney.

23.   <u>Waiver of Appeal and Post-Conviction Review</u>.   Defendant knowingly and expressly waives any and all rights to appeal Defendant's conviction in this case, including a waiver of all motions, defenses and objections which Defendant

could assert to the charge(s), or to the Court's entry of judgment against Defendant; except that both Defendant and the United States preserve the right to appeal any sentence imposed by the Court, to the extent that an appeal is authorized by law. Also, Defendant knowingly and expressly waives any and all rights to contest Defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255. These waivers are full and complete, except that they do not extend to the right to appeal or seek post-conviction relief based on grounds of ineffective assistance of counsel or prosecutorial misconduct.

## H.  VOLUNTARINESS OF PLEA AND OPPORTUNITY TO CONSULT WITH COUNSEL

24. <u>Voluntariness of Plea</u>. Defendant represents that Defendant's decision to plead guilty is Defendant's own, voluntary decision, and that the following is true:

   (a) Defendant has had a full opportunity to discuss all the facts and circumstances of this case with Defendant's attorney, and Defendant has a clear understanding of the charges and the consequences of this plea, including the maximum penalties provided by law.

   (b) No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this written agreement.

   (c) No one has threatened Defendant or Defendant's family to induce this guilty plea.

   (d) Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

25. <u>Consultation with Attorney</u>. Defendant has discussed this case and

this plea with Defendant's attorney and states that the following is true:

    (a)    Defendant states that Defendant is satisfied with the representation provided by Defendant's attorney.

    (b)    Defendant has no complaint about the time or attention Defendant's attorney has devoted to this case nor the advice the attorney has given.

    (c)    Although Defendant's attorney has given Defendant advice on this guilty plea, the decision to plead guilty is Defendant's own decision. Defendant's decision to enter this plea was made after full and careful thought, with the advice of Defendant's attorney, and with a full understanding of Defendant's rights, the facts and circumstances of the case, and the consequences of the plea.

## I. GENERAL PROVISIONS

26. <u>Entire Agreement</u>. This Plea Agreement, and any attachments, is the entire agreement between the parties. Any modifications to this Plea Agreement must be <u>in writing</u> and signed by all parties.

27. <u>Public Interest</u>. The parties state this Plea Agreement is in the public interest and it takes into account the benefit to the public of a prompt and certain disposition of the case and furnishes adequate protection to the public interest and is in keeping with the gravity of the offense and promotes respect for the law.

28. <u>Execution/Effective Date</u>. This Plea Agreement does not become valid and binding until executed by each of the individuals (or their designated representatives) shown below.

## J. SIGNATURES

29. <u>Defendant.</u>  I have read all of this Plea Agreement and have discussed it with my attorney.  I fully understand the Plea Agreement and accept and agree to it without reservation.  I do this voluntarily and of my own free will.  No promises have been made to me other than the promises in this Plea Agreement.  I have not been threatened in any way to get me to enter into this Plea Agreement.  I am satisfied with the services of my attorney with regard to this Plea Agreement and other matters associated with this case.  I am entering into this Plea Agreement and will enter my plea of guilty under this Agreement because I committed the crime to which I am pleading guilty.  I know that I may ask my attorney and the judge any questions about this Plea Agreement, and about the rights that I am giving up, before entering into the plea of guilty.

12/6/21
Date

_____
Brady Joel Tomlinson

30. <u>Defendant's Attorney.</u>  I have read this Plea Agreement and have discussed it in its entirety with my client.  There is no Plea Agreement other than the agreement set forth in this writing.  My client fully understands this Plea Agreement.  I am satisfied my client is capable of entering into this Plea Agreement, and does so voluntarily of Defendant's own free will, with full knowledge of Defendant's legal rights, and without any coercion or compulsion.  I have had full access to the Government's discovery materials, and I believe there is

15

a factual basis for the plea. I concur with my client entering into this Plea Agreement and in entering a plea of guilty pursuant to the Plea Agreement.

12/6/21
Date

*[signature]*
Erin M. Carr
Attorney for Brady Joel Tomlinson
300 Walnut Street, Suite 140
Des Moines, IA  50309
Tel: (515)  875-4868
erin@carrlawiowa.com

31.  **United States.**  The Government agrees to the terms of this Plea Agreement.

RICHARD D. WESTPHAL
Acting United States Attorney

By: *[signature]*
Adam J. Kerndt
Assistant United States Attorney
U.S. Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, IA  50309
(515) 473-9300
Adam.Kerndt@usdoj.gov

Date: 12/7/2021

GUSTAV W. EYLER
Director
Consumer Protection Branch

By: *[signature]*
Ross Goldstein
Marcus P. Smith
Trial Attorneys
Consumer Protection Branch
Civil Division
U.S. Department of Justice
450 5th Street, N.W.
Washington, D.C.  20001
Ross.Goldstein@usdoj.gov
Marcus.P.Smith@usdoj.gov

Date: 12/7/2021

16